**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS-WESTERN DIVISION**

| | | |
|---|---|---|
| ROCKFORD PARK DISTRICT, an Illinois Unit of Local Government, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:08-cv-02676 |
| vs. | ) ) | Judge: Philip G. Reinhard |
| TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, | ) ) ) ) | Magistrate: P. Michael Mahoney |
| Defendant. | ) ) | |

## UNCONTESTED MOTION FOR LEAVE TO FILE

Defendant, TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, ("TIG"), by and through its undersigned attorneys, seeks leave of Court to file its corrected Answer to Plaintiff's Complaint to conform with LR 10.1. (Attached hereto as Exhibit "A"). TIG's Answer, timely filed on May 30, 2008 (Docket # 12), inadvertently omitted the full allegations contained in Plaintiff's Complaint pursuant to LR 10.1. TIG's corrected Answer does not change or alter any of its responses or defenses. Plaintiff has indicated that it has no objection to this motion or the corrected Answer.

WHEREFORE, based on the above, TIG respectfully requests leave to file its corrected Answer to Plaintiff's Complaint.

1187224.1

/s/ C. Kyle Lang
C. Kyle Lang  #6280427
CLAUSEN MILLER P.C.

MARGARET J. ORBON
ILENE M. KOREY
C. KYLE LANG
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
morbon@clausen.com
ikorey@clausen.com
clang@clausen.com

Attorneys for Defendant TIG INSURANCE COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been electronically served upon the following counsel by on this 2nd day of June, 2008.

Marc C. Gravino
WILLIAMS MCCARTHY, LLP
120 West State Street
P. O. Box 219
Rockford, IL  61105-0219
mgravino@wilmac.com
*Attorney for Plaintiff*

/s/ C. Kyle Lang
Attorney

1187224.1

# EXHIBIT

# A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS-WESTERN DIVISION**

| | | |
|---|---|---|
| ROCKFORD PARK DISTRICT, an Illinois Unit of Local Government, | ) ) ) | No. 1:08-cv-2676 |
| Plaintiff, | ) ) | |
| vs. | ) ) | Honorable Philip G. Reinhard |
| | ) | Honorable P. Michael Mahoney |
| TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, Defendant. | ) ) ) ) ) ) | |

**DEFENDANT'S, TIG INSURANCE COMPANY, AS SUCCESSOR BY MERGER TO INTERNATIONAL INSURANCE COMPANY, ANSWER TO PLAINTIFF'S COMPLAINT**

Now comes the Defendant, TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, ("TIG") by and through its attorneys, Clausen Miller P.C., and for its Answer to the Complaint of Plaintiff, Rockford Park District, ("Park Di strict"), states as follows:

**ANSWER TO COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

**ALLEGATION NO. 1:**

In this action, the Rockford Park District ("the Park district"), asserts the following claims against International:

      (a)      a claim for declaratory relief that International is obligated to indemnify the Park District With respect to the matters in the complaint filed against the Park District by the State of Illinois on December 28, 2005, alleging that the Park District is legally required to pay the cost of remediating

alleged contamination with respect to the Park District property located at 1401 E. Riverside Blvd. in Loves Park, Winnebago County, Illinois ("the Sand Park Site") and the costs of monitoring the environmental conditions at the Sand Park Site after remediation, as well as indemnify the Park District for certain related costs and expenses incurred by the Rockford Park District with respect to the Sand Park Site; and

(b)    a claim for declaratory relief that the facts and circumstances in this case trigger two or more occurrences under the International policy for purposes of determining the liability limits of International's indemnity obligation, where the subject insurance policy indemnity limits are $1.0 million per "occurrence" with no aggregate indemnity limits.

**ANSWER NO. 1:**    Paragraph 1 contains allegations describing Plaintiff's Complaint to which no response is required.  To the extent that a response is required, TIG admits only that Plaintiff has brought an action for declaratory judgment.  TIG denies that plaintiff is entitled to any relief from TIG in this action.  TIG further answers that the allegations in paragraph 1 are conclusions to which no answer is required.  To the extent an answer is required, TIG denies that the Park District is entitled to any relief as plead, and further denies subparagraphs (a) through (b).

**ALLEGATION NO. 2:**

In addition, as part of its claim for declaratory relief and other relief, the Park District seeks a monetary judgment against International for its legally assessed share of the remedial costs associated with the Sand Park Site, as well as any other insurance coverage relief deemed appropriate:

3

**ANSWER NO. 2**:.    The allegations in paragraph 2 are conclusions to which no answer is required.  To the extent an answer is required, TIG denies that the Park District is entitled to any relief as plead.

**ALLEGATION NO. 3:**

The Park District is an Illinois local unit of municipal government with its principal place of business in Rockford, Illinois.  The Park District was and is organized for the purpose of providing a structure for the local community to establish and maintain public park and recreation systems that provide for the health, well-being, and entertainment of its citizens.

**ANSWER NO. 3:**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 3, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 4:**

At all times relevant to this litigation, International was a corporation in the business of issuing policies of insurance, and at all relevant times was and is doing business in Illinois. International Insurance Company was, on information and belief, merged into TIG Insurance Company on or about December 16, 2002, which was after the issuance of the subject insurance policy.

**ANSWER NO. 4:**    TIG admits that International Insurance Company was a corporation that issued insurance policies to citizens of Illinois, and was doing business in Illinois, and merged into TIG. on or about December 16, 2002.  TIG denies the remaining allegations of paragraph 4.

4

**ALLEGATION NO. 5:**

In return for the payment of premiums by the Park District and other valuable consideration, International issued at least one primary policy of insurance to the Park District, policy no. 500205228, which provided comprehensive general liability ("CGL") insurance coverage, including but not limited to coverage for occurrences during the policy period that caused property damage. (This CGL policy, a true and correct copy of which is attached hereto as Exhibit A, is hereinafter referred to as the "Policy"). In addition, on information and belief, International issued at least one excess/umbrella liability policy to the Park District, as policy no. 5220537453, with limits of $10,000,000, as shown by a June 21, 1985 Certificate of Insurance, a true and correct copy of which is attached hereto as Exhibit B. (This excess/umbrella policy is hereinafter referred to as the "Umbrella Policy").

**ANSWER NO. 5:**      TIG admits only that International Insurance Company issued a primary policy under Policy No. 500205228 ("the policy") with coverage provided pursuant to the terms, conditions, limitations and exclusions of the policy issued and answers further that the policy speaks for itself. To the extent that the allegations of paragraph 5 and the Complaint are inconsistent with the policy, TIG denies said allegations. TIG has insufficient knowledge or information upon which to form a belief as to whether International Insurance Company issued alleged policy no. 522 0537454; to the extent this policy exists TIG denies that it has any financial responsibility for alleged policy no 522 0537454. TIG denies the remaining allegations of paragraph 5.

**ALLEGATION NO. 6:**

In additional to other obligations on the part of International, the Policy contains an obligation on the part of International to defend and indemnify the Park District for all losses

5

which the Park District becomes legally obligated to pay because of bodily injury or property damage caused by occurrences; and as detailed below, International has agreed to participate in the Park District's defense in the underlying action, under a reservation of rights, by paying for a portion of the Park District's defense fees and expenses in the underlying action under a defense cost sharing arrangement with another of the Park District's liability carriers.

**ANSWER NO. 6:**    TIG admits only that International Insurance Company issued a primary policy under Policy No. 500205228 with coverage provided pursuant to the terms, conditions, limitations and exclusions of the policy issued and answers further that the policy speaks for itself. To the extent that the allegations of paragraph 6 and the Complaint are inconsistent with the policy, TIG denies said allegations. TIG admits that it has agreed to participate in the Rockford Park District's defense in the underlying action, subject to a reservation of rights, and neither admits nor denies the remaining allegations of paragraph 6, but demands strict proof thereof.

**ALLEGATION NO. 7:**

In additional to the other obligations on the part of International, on information and belief, the Umbrella Policy by its terms or by operation of law contains an obligation on the part of International to indemnify the Park District for certain losses as defined therein, which the insured shall become legally obligated to pay as damages because of personal injury and property damage caused by occurrences (or language substantially to that effect). In addition, on information and belief, the Umbrella policy provides for certain "drop down" coverage by its terms or by operation of law in the event the respective underlying policy or policies provide no coverage to the insured for a given occurrence, or language substantially to that effect, because of insolvency or other circumstances. The carrier that issued an underlying policy to the

6

Umbrella Policy, Integrity Insurance Company, filed for receivership several years ago and is unable to fund its coverage obligations to the Park District.

**ANSWER NO. 7:**   TIG has insufficient knowledge or information upon which to form a belief as to whether International Insurance Company issued alleged policy no. 522 0537454; to the extent this policy exists TIG denies that it has any financial responsibility for alleged policy no 522 0537454.  TIG denies the remaining allegations of paragraph 7.

**ALLEGATION NO. 8:**

The Park District has substantially performed all of its obligations under the above-referenced policies issued by International.

**ANSWER NO. 8:**   TIG denies the allegations of paragraph 8.

**ALLEGATION NO. 9:**

Although International has agreed pursuant to the terms of the Policy to contribute to the cost of the Park District's defense in the underlying suit with another carrier, under a reservation of certainty of its rights to disclaim an indemnity obligation at a later date if appropriate, as alleged above, it has recently maintained in the claim process that the facts and circumstances presented in the underlying suit limit its potential indemnity liability (including defense fees) to a maximum of $1.0 million under the Policy; and it has recently denied the existence of the Umbrella Policy; whereas the Park District maintains that the facts and circumstances of the underlying suit trigger multiple occurrences that are subject to indemnity under the Policy and Umbrella Policy, and that International's indemnity obligation is thus not limited to $1.0 million. Accordingly, there is an actual and justiciable controversy between the Park District and International as to whether the Policy or the Umbrella Policy provide indemnity with respect to the Sand Park matter, and whether the indemnity limits are capped at $1.0 million.

7

**ANSWER NO. 9:**.    TIG admits only that it has agreed to participate in the defense of Park District, subject to a reservation of rights, and to the extent the Park District attempts to characterize TIG's position, such is a breach of confidentiality attaching to statements made only under strict confidentiality in mediation, and TIG denies the remaining allegations of paragraph 9.

**ALLEGATION NO. 10:**

From approximately 1941 to date, the Park District has owned the Sand Park site, consisting of approximately 41 acres of real property located at 1401 E. Riverside Blvd. in Loves Park, Winnebago County, Illinois, and commonly known as "Sand Park."

**ANSWER NO 10:**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 10, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 11:**

On information and belief, and commencing at an unknown time which the Park District, despite substantial and repeated efforts and investigation, has been and continues to be unable to determine, the majority of Sand Park was used as a municipal landfill for the refuse disposal needs of the people of the City of Loves Park.

**ANSWER NO. 11:**.    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 11, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

1187096.1

**ALLEGATION NO. 12:**

Use of Sand Park as the Loves Park municipal landfill came about, on information and belief, pursuant to discussions between the then incumbent executive director of the Park District, one Earl Elliott, since deceased, the then incumbent major of the City of Loves Park, one Dan Timmis.

**ANSWER NO. 12:**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 12, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 13:**

The use of Sand Park as the municipal landfill for the City of Loves Park is believed to have commenced in the early 1950's, although the specific time period is currently unknown to the Park District.

**ANSWER NO. 13:**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 13, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 14:**

From the beginning o the period of the use of Sand Park as a municipal landfill for the City of Loves Park, until such use was terminated in or about 1972, and at all times during such period, Sand Park was, on information and belief, made available by the Park District and the City of Loves Park on a gratuitous basis, pursuant to a verbal "handshake" agreement, at no cost to the City of Loves Park and for no income or charges payable to the Park District.

9

**ANSWER NO. 14:**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 15:**

From approximately the early/mid 1950's until approximately 1972, the Sand Park Site on information and belief was operated as a municipal landfill by, among other companies, Browning Ferris Industries, Inc. and earlier, Rockford Disposal, Inc.  Currently, the Sand Park Site is not being used as a municipal landfill or for any other disposal purpose, and is a closed landfill.  However, the site continues to contain all municipal and other waste therein disposed during the period of active operation as such landfill.  Portions of the Sand Park site are presently maintained and operated by the Park District as a swimming pool and recreational area, and as a memorial park area, pending commencement of the remediation and monitoring as require by the State of Illinois as detailed below.

**ANSWER NO. 15:.**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 15, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 16:**

From some point in the 1970's into at least the mid to late 1980's, or later, on information and belief, the Illinois Environmental Protection Agency ("IEPA") conducted investigations both of records and of the Sand Park physical site itself relative to, and on information and believe relative only to, the question of proper closure of a site formerly used as a landfill, particularly with respect to the creation and placement of a proper "cover" or layer of clean topsoil, with

subsequently grown turf or other appropriate vegetative matter, over and atop the portions of Sand Park previously used as such landfill.

**ANSWER NO 16:**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 16, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 17:**

Such above-described investigative activities of the IEPA did not, and were not reasonably expected to, notify the Park District that the Sand Park site had been determined to bet he source of regulated contaminants that threatened or impacted the ground water beneath the Sand Park site.

**ANSWER NO. 17:**    TIG denies the allegations of paragraph 17.

**ALLEGATION NO. 18:**

Although unknown to the Park District until approximately 2004 after various studies were conducted, at various times during the Park District's ownership of the Sand Park Site, including during each of the policy periods of the Policy and the Umbrella Policy, on information and belief, one or more sudden and accidental occurrences took place whereby various substances were suddenly and accidentally released into the soil at and around the Sand Park Site, which substances included contaminants that the State of Illinois is now requiring the Park District to remediate, as detailed below.

**ANSWER NO. 18:**    TIG admits only that the State of Illinois complaints attached as Exhibits C and D speak for themselves; TIG denies the remaining allegations of paragraph 18.

11

**ALLEGATION NO. 19:**

The IEPA and the EPA conducted various investigations into the source of certain contaminants in the neighboring industrial areas at or near the Sand Park Site, in Loves Park, Illinois in the 1980's and thereafter, during which period the known source or sources remained unknown.

**ANSWER NO. 19:.**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 19, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 20:**

For several decades after the initial investigations, the evidence compiled by the IEPA and EPA, including hydro geologic studies commissioned by the IEPA and EPA, suggested that the probably sources of the contaminants were various industrial facilities in the areas surrounding the Sand Park Site, rather than the Sand Park Site itself, because of a number of hydro geological factors that tended to rule out the Sand Park site as a probably source of the contamination.

**ANSWER NO. 20:.**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 20, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 21:**

In February, 2001, the State of Illinois sought reimbursement from the Park District for the costs incurred in conducting various studies with respect to the Sand Park Site, and demanded payment of approximately $117,000 from the Park District in order to settle the disputed matter regarding that Site.

**ANSWER NO. 21:**.   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 21, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 22:**

In or about 2002, the Park District paid the claimed sum of about $117,000 to the State of Illinois in two respective installments, after the State of Illinois threatened suit, and in response to the State of Illinois' letter which advised that "settlement in the [Park District's] case" would be effected by the payment of that sum to the State of Illinois by the Park District.

**ANSWER NO. 22:**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 22, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 23:**

During the 2001 and 2002 time period, the Illinois Department of Public Health conducted a Comprehensive Public Health Assessment of the Sand Park site, and ultimately concluded in a written report entitled, *Public Health Assessment* dated March 14, 2002, that the "current exposures are not at levels expected to cause adverse health effects; thus, the groundwater at Sand Park site poses no apparent public health hazard."

**ANSWER NO. 23:**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 23, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

1187096.1

**ALLEGATION NO. 24:**

Notwithstanding this Public Health Assessment in 2002, and notwithstanding its 2002 settlement with the Park District as set forth in paragraphs 21-22 above, on information and belief, the State of Illinois continued to investigate the areas at and around the Sand Park Site in 2002 and 2003, and advised the Park District in various discussions in 2004 of its conclusion at that time that the Sand Park Site was not merely in the path of various contaminants emanating from the surrounding area, but that the Sand Park site was a likely source of at least some of those contaminants.

**ANSWER NO. 24:.**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 24, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 25:**

Over the period of 2003-2004, the Park District conducted its own evaluation of the available environmental data, and continued to review additional information from the IEPA as it was developed and made available, to attempt to determine the nature and possible source(s) of the contamination.

**ANSWER NO. 25:.**   TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 25, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION 26:**

Because o the continued investigative activities in 2003 and 2004 by the State of Illinois following its 2002 settlement with the State, on or about November 10, 2004, the Park District

notified International by letter that, notwithstanding the State of Illinois' settlement with the Park District regarding the Sand Park Site, the State was considering an action against the Park District to compel remediation of the Sand Park site, and that the Rockford Park District was seeking defense and indemnity from International with respect to this potential suit by the State of Illinois.

**ANSWER NO. 26:**    TIG admits only that it received a letter from the Park District dated November 10, 2004, and that the letter speaks for itself.  TIG denies the remaining allegations of paragraph 26.

**ALLEGATION NO. 27:**

On or about April 26, 2005 after exchanging initial correspondence with the Park District, International responded with a letter indicating among other things that it: a) consented to the Park District entering into a Consent Order with the State of Illinois with respect to remediation of the Sand Park Site; b) would investigate the matter before making a coverage determination; and c) would reserve its rights during its investigation.

**ANSWER NO. 27:**    TIG admits only that it sent a letter to the Park District dated April 26, 2005, and that the letter speaks for itself.  TIG denies the remaining allegations of paragraph 27.

**ALLEGATION NO. 28:**

From April 2005 through December 2005, the Park District cooperated with International in providing information and records relating to the Sand Park Site.

**ANSWER NO. 28:**    TIG denies the allegations of paragraph 28.

15

**ALLEGATION NO. 29:**

On December 28, 2005, the State of Illinois field a Complaint against the Park District in the 17th Judicial Circuit Court, Winnebago County, Illinois, as case no. 05 MR 452, seeking to hold the Park District responsible for the costs associated with the remediation of contaminants at the Sand Park Site and post remedial monitoring, as alleged in that suit. A true and correct copy of the Complaint in that suite (referred to herein as the Underlying Suit or Underlying Action) is attached hereto as Exhibit C and is incorporated herein by reference. A true and correct copy on the Amended Complaint filed in the Underlying Action on September 12, 2007 is attached hereto as Exhibit D.

**ANSWER NO. 29:**    TIG admits only that the State of Illinois filed a complaint on or about December 28, 2005, which speaks for itself; and for the remaining allegations, TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 29, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 30:**

On January 14, 2006, within a few days of being served in the Underlying Suit, the Park District: a) notified International in writing (through its counsel) that the State of Illinois had filed the Underlying Suit against the Park District; b) provided International with a copy of that suit; and c) and sought defense and indemnity from International with respect to that suit/claim.

**ANSWER NO 30:**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 30, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

16

**ALLEGATION NO. 31:**

In a March 17, 2006 claim letter, International: a) acknowledged the Park District's tender of the defense and indemnity of the Underlying Suit; b) agreed to provide a defense to the Park District under a reservation of rights; and c) advised the Park District that it would investigate the claim to determine whether it had any indemnity obligations to the Park District.

**ANSWER NO. 31:**    TIG admits only that it sent a letter to the Park District dated March 17, 2006, and that the letter speaks for itself.  TIG denies the remaining allegations of paragraph 31.

**ALLEGATION NO. 32:**

Over the next two years, from March 2006 to the present, the Park District has provided additional information to International as it has been developed and discovered, and International has continued its investigation of the claim and its indemnity obligations.

**ANSWER NO. 32:**    TIG admits only that the Park District has provided it with some additional information and that its investigation has continued.  TIG denies the remaining allegations of paragraph 32.

**ALLEGATION NO. 33:**

At the present time, International is defending the Park District in the Underlying Suit by agreeing to defense cost-share with another of the Park District's liability carriers, and has paid certain of the defense fees and expenses.  However, International currently asserts that under certain circumstances it may not have an obligation to indemnify or fully indemnify the Park District in the Underlying Suit, and that its indemnity obligation if any is limited to a single occurrence limit of $1.0 million under the Policy.

**ANSWER NO. 33:**    TIG admits only that it is participating in the defense of the Park District under a full reservation of rights, and to the extent the Park District attempts to characterize TIG's position, such is a breach of confidentiality attaching to statements made only under strict confidentiality in mediation, and TIG denies the remaining allegations of paragraph 33.

**ALLEGATION NO. 34:**

According to the State of Illinois in the Underlying Suit, the Park District is legally obligated to remediate various contaminants at the Sand Park Site, pursuant to various environmental laws, regulations and the IEPA's directives.

**ANSWER NO. 34:**    TIG admits only that the allegations in the underlying suit speak for themselves. Further answering, TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 34, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 35:**

To date, the Park District has expended significant sums to investigate the Sand Park matter, and to defend its interests in the Underlying Suit and will be legally obligated to expend significant sums in the future to defend against the claims in the Underlying Suit.

**ANSWER NO. 35:**    TIG lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 35, and, therefore, neither admits nor denies the same, but demands strict proof thereof.

**ALLEGATION NO. 36:**

As alleged above, on or about November 10, 2004, the Park District notified International of a potential suit, in that the State of Illinois had asserted that the Park District was responsible

for the costs of investigating and remediating alleged violations of various environmental laws at the Sand Park Site, and ha threatened suit against the Park District; and the Park District sought defense and indemnity from International against such potential litigation.

**ANSWER NO. 36:**   TIG admits only that the Park District forwarded a letter to TIG dated November 10, 2004, and that the letter speaks for itself.  TIG denies the remaining allegations of paragraph 36.

**ALLEGATION NO. 37:**

As alleged above, on or about January 14, 2006, the Park District notified International that the State of Illinois had filed suit against the Park District in December 2005, and requested that International provide the Park District with a defense to the State of Illinois' lawsuit and that it indemnify the Park District from any judgment entered against the Park District in that suit.

**ANSWER NO. 37:**   TIG admits only that the Park District forwarded a letter to TIG dated January 14, 2006, and answers only that the letter speaks for itself.  TIG denies the remaining allegations of paragraph 37.

**ALLEGATION NO. 38:**

As indicated above, although International has agreed to provide a defense under a reservation of rights, the parties have an actual and justiciable controversy as to International's indemnity obligations.

**ANSWER NO. 38:**   TIG admits only that it is participating in the defense of the Park District under a full reservation of rights, and to the extent the Park District attempts to characterize TIG's position, such is a breach of confidentiality attaching to statements made only under strict confidentiality in mediation, and TIG denies the remaining allegations of paragraph 38.

19

**ALLEGATION NO 39:**

The Park District incorporates and realleges paragraphs 1 through 38 above as paragraph 39 of this Count as if fully set forth herein.

**ANSWER NO. 39:**     TIG incorporates its answers to paragraphs 1-38 for its answer to paragraph 39, as though fully set forth herein.

**ALLEGATION NO. 40:**

International issued a primary CGL policy to the Park District as alleged above.

**ANSWER NO. 40:**     TIG admits only that International Insurance Company issued a primary policy under Policy No. 500205228 with coverage provided pursuant to the terms, conditions, limitations and exclusions of the policy issued and answers further that the policy speaks for itself.

**ALLEGATION NO. 41:**

In addition to the CGL policy referenced in paragraph 40 above, on information and belief, International issued other CGL coverage to the Park District that has not yet been located, despite the Park District's due diligence in attempting to do so.  On information and belief, that yet to be located policy or policies have substantially the same coverage terms and conditions as the identified CGL policy.  These yet to be located policies are referred to herein as the "Lost Policies".

**ANSWER NO. 41:**     TIG denies the allegations of paragraph 41.

**ALLEGATION NO. 42:**

The Policy and the Lost Policies provide coverage for the Underlying Action and any legally required remediation because, among other things, the State of Illinois has alleged that the Park District is legally obligated to pay for various property damage and threats to groundwater resulting from occurrences during the applicable policy periods and because the State of Illinois has filed suit against the Park District seeking monetary damages on account of such damage to property and threats to groundwater.

**ANSWER NO. 42:**    TIG denies the allegations of paragraph 42.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

43.    The Complaint fails to state a claim against TIG upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

44.    The Park District's claims against TIG may be barred, in whole or in part, by the doctrine of laches, waiver, release, accord and satisfaction, estoppel, unclean hands and/or by the applicable Statute of Limitations.

### THIRD AFFIRMATIVE DEFENSE

45.    The Park District's claims against TIG may be barred, in whole or in part, because all conditions precedent and subsequent to the establishment of liability coverage or duty to defend, if any, under the policy issued by International have not been satisfied or fulfilled.

1187096.1

## FOURTH AFFIRMATIVE DEFENSE

46.    The International policy only provides coverage for an "occurrence" happening during the policy period as defined in the policy.  Some or all of the circumstances for which the Park District seeks coverage, may not constitute an "occurrence," may not have been fortuitous, contingent or unknown risks or may have been circumstances which were "expected" or "intended" from the standpoint of the insured, as those terms are used and/or defined in the policy issued by International, thus precluding coverage.

## FIFTH AFFIRMATIVE DEFENSE

47.    The International policy does not apply to damage to or destruction or loss of property owned by the Insured. Some or all of the circumstances for which the Park District seeks coverage, may include damage to or destruction or loss of property owned by the Insured, thus precluding coverage for those damages.

## SIXTH AFFIRMATIVE DEFENSE

48.    There may be no coverage for some or all of the claims because such claims may not be based upon a "loss," "property damage," "bodily injury," "personal injury," or "occurrence" as those terms are used and defined in the International policy or any form of damage or "damages" as to which coverage is afforded under the terms and conditions of the International policy.

## SEVENTH AFFIRMATIVE DEFENSE

49.    The International policy may not apply to remedial actions or costs thereof or to damages for injury to, destruction of, or loss of natural resources, including the cost of assessing such injury, destruction, or loss.  The International does not cover ordinary business expenses

22

which the Park District was required to incur for conservation and environmental cleanup as part

of its ongoing business operations

## EIGHTH AFFIRMATIVE DEFENSE

50.      To the extent some or all of the liabilities for which the Park District may seek

coverage arise solely or primarily from circumstances, injury and/or loss which did not take

place during any effective period of coverage provided by the International policy, there is no

coverage.

## NINTH AFFIRMATIVE DEFENSE

51.      The International policy does not provide coverage for, or excludes from

coverage, loss or damage which constitutes, represents, or arises out of fines, penalties or

punitive or exemplary damages.  Moreover, some or all of the insured's claims may be barred by

considerations of public policy. the event that any claim by the insured is construed to seek

punitive damages, recovery of such punitive damages is unconstitutional in that they violate the

excessive fines clause of the Eighth Amendment, the Equal Protection Clause of the Fourteenth

Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments of the United

States Constitution and corresponding provisions of the applicable Illinois State Constitution.

## TENTH AFFIRMATIVE DEFENSE

52.      The International policy does not provide coverage for, or excludes from

coverage, loss or damage which constitutes, represents, arises out of claims, demands or suits

seeking non pecuniary or injunctive relief.

## ELEVENTH AFFIRMATIVE DEFENSE

53.      The International policy does not apply to claims or losses alleged to be based

upon or attributable to intentional misconduct, willful, wanton or reckless behavior, or activity

23

that is in violation of any statute, regulation, ordinance or instruction of any government body or public policy.

## TWELFTH AFFIRMATIVE DEFENSE

54.    The Park District's claims against TIG may be barred and precluded or limited in whole or in part, by the provisions, terms, exclusions, definitions, limitations and conditions of the International policy.

## THIRTEENTH AFFIRMATIVE DEFENSE

55.    To the extent that costs and expenses claimed to have incurred were neither reasonable nor necessary, or were incurred voluntarily or without the prior written consent of TIG, coverage is precluded.

## FOURTEENTH AFFIRMATIVE DEFENSE

56.    Upon information and belief, the International policy does not apply to claims arising out of liability of others which have been assumed under a contract, merger or agreement.

## FIFTEENTH AFFIRMATIVE DEFENSE

57.    Any recovery against International must be reduced to the extent the damages were not mitigated, minimized or avoided.

## SIXTEENTH AFFIRMATIVE DEFENSE

58.    TIG's liability, if any, under the International policy does not attach unless and until all the self-insured retentions and/or deductibles (including self-insured retentions and/or deductibles that apply "per occurrence") have been paid by the insured.

## SEVENTEENTH AFFIRMATIVE DEFENSE

59.    To the extent the Park District, or its affiliates, agents, brokers or other representatives, intentionally or unintentionally, failed to disclose, concealed, omitted or

misrepresented facts material to the risks at issue in this litigation to International, all claims under the International policy at issue herein are barred and, furthermore, the equitable doctrines of rescission and reformation may apply.

## EIGHTEENTH AFFIRMATIVE DEFENSE

60.     To the extent any insurance at the same level of coverage of the policy issued by International were issued by an insurance carrier that is now or in the future becomes insolvent, the International policy does not "drop over".

## NINETEENTH AFFIRMATIVE DEFENSE

61.     Upon information and belief, the insured has failed to perform all of its obligations under the International policy.

## TWENTIETH AFFIRMATIVE DEFENSE

62.     To the extent that the claims alleged in Plaintiffs' Complaint arose out of hazards, conditions, risks or losses known to the insured before the effective date of the International policy, such claims are barred.  Also, the International policy does not provide coverage for losses, claims, or harm already in existence prior to the effective date of such policy.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

63.     TIG seeks and asserts a set-off of any liability based upon the existence of applicable coverage.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

64.     There is no coverage for claims based on public or private nuisance because such claims do not constitute "bodily injuries," "personal injury," or "property damage" as those terms are defined in the International policy.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

65.     The Park District's claims may be barred in whole or in part by reason of the existence of other insurance policies, including policies with respect to which the International policy was previously, subsequently or contemporaneously effective, and by reason of the "other insurance" clause contained in the International policy.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE.

66.     The Park District was at all times represented by counsel of its choosing with regard to the underlying claims or suits, and no harm, injury or damage resulted from TIG's coverage positions, which are well grounded in fact and in law.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

67.     TIG's liability, if any, is restricted to the per occurrence per policy period limit and/or aggregate limit as stated in the International policy at issue herein.  Coverage under the International policy is barred, in whole or in part, to the extent any applicable per occurrence and/or aggregate limit has been impaired by prior payments.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

68.     The International policy may exclude coverage for damages to premises that were sold, given away, abandoned, or alienated.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

69.     Any liability of TIG under the International policy must be reduced by the proper allocation of liability among all applicable insurance policies.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

70.     The International Policy No. 500205228 was initially issued for the period January 1, 1984 to January 1, 1987, but was cancelled effective January 1, 1986.

1187096.1

## TWENTY-NINTH AFFIRMATIVE DEFENSE

71.     To the extent TIG was not afforded timely, sufficient and appropriate written notice of losses, claims, occurrences and/or suits, as required by the International policy, coverage is barred.

## THIRTIETH AFFIRMATIVE DEFENSE

72.     To the extent the International policy contains a pollution and/or contamination exclusion, such exclusion may exclude coverage for the underlying environmental claims against Plaintiff.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

73.     To the extent TIG makes any payment to Plaintiff under the International policy at issue, TIG is subrogated to Plaintiff's rights of recovery against any person relating to the loss for which payment was made.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

74.     To the extent Plaintiff cannot prove the existence or material terms and exclusions of the allegedly issued insurance policies under which it seeks coverage, Plaintiff is denied any coverage under such lost policy(ies).

## THIRTY-THIRD AFFIRMATIVE DEFENSE

75.     To the extent some or all of the costs for which Plaintiff may seek coverage were incurred, paid, due or owing solely or in part prior to notice being provided to TIG, such pretender costs are not recoverable.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

76.     To the extent the International policy responds to Plaintiff's claim, the defense costs are included within the policy limits and erode the limits.

27

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

77.    TIG reserves the right to offer additional defenses which cannot now be articulated due to the Park District's failure to particularize its claims or due to the Park District's failure to attach to its Complaint complete and accurate copies of the International insurance policy or copies of any other critical documents that may bear on the Park District's alleged insurance, or due to the Park District's failure to provide more specific information concerning the nature of the environmental claims for which it seeks coverage.    Upon further particularization of the claims by the Park District or upon discovery concerning the terms, provisions, conditions, limitations and exclusions of the International policy, or upon discovery of further information concerning the Park District's environmental claims, TIG reserves the right to assert additional defenses or supplement, revise or omit those asserted herein.

WHEREFORE, TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, respectfully requests that this Court grant judgment in its favor as follows:

1.    That the claims against TIG INSURANCE COMPANY, as successor by merger to INTERNATIONAL INSURANCE COMPANY, a foreign corporation, be dismissed with prejudice;

2.    That judgment be entered on TIG INSURANCE COMPANY's Affirmative Defenses;

3.    That this Court declare that TIG INSURANCE COMPANY is not obligated to defend, investigate or indemnify the Park District with respect to the environmental claims or potential claims identified in the Complaint;

28

1187096.1

4.    TIG INSURANCE COMPANY be awarded its costs, attorneys' fees and expenses; and

5.    That this Court grant such other further relief as may be just and proper.

Dated this 2nd day of June, 2008

Respectfully submitted,

/s/ Ilene M. Korey
Ilene M. Korey  #6185645
CLAUSEN MILLER P.C.

Margaret J. Orbon
Ilene M. Korey
C. Kyle Lang
**CLAUSEN MILLER P.C.**
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010

Attorneys for TIG INSURANCE COMPANY, by merger to International Insurance Company

29